# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| TONYA LA'FAWN MORGAN, | * |
| | * |
| Plaintiff, | * |
| | *     Civil No. TMD 16-1141 |
| v. | * |
| | * |
| | * |
| NANCY A. BERRYHILL, | * |
| Acting Commissioner of Social Security, | * |
| | * |
| Defendant.[1] | * |
| | *********** |

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Tonya La'Fawn Morgan seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 22), Defendant's Motion for Summary Judgment (ECF No. 23), and "Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment" (ECF No. 26).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 22) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1962, has a high-school education, and previously worked as a school bus driver, fast-food worker, and cashier. R. at 38. Plaintiff protectively filed an application for SSI on February 1, 2012, alleging disability beginning on March 17, 2010, due to GERD and leg and heart problems. R. at 32, 198-203, 221. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 104-29, 134-41, 145-49. On November 25, 2014, ALJ Eugene Bond held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 45-61. On January 15, 2015, the ALJ issued a decision finding Plaintiff not disabled since the application date of February 1, 2012. R. at 29-44. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on March 17, 2016. R. at 1-25, 299-300, 643-48. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 18, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. After the parties consented, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.  Vinu Ganti, M.D.**

The ALJ reviewed Dr. Ganti's opinions in his decision:

> In May 2012, treating provider, V. Ganti, MD [R. at 465-511, 536-42, 561-71, 580-83] opined that [Plaintiff] could sit for one hour in an eight-hour workday, stand or walk for zero hours in an eight-hour workday, requires three 30-minutes [sic] breaks during an eight-hour workday, can occasionally lift less than ten pounds, and is expected to be absent more than four months a month [R. at 461-64]. In August 2013, Dr. Ganti provided another opinion, stating that [Plaintiff] could sit for four hours in an eight-hour workday, stand or walk for two hours in an eight-hour workday, will requires [sic] one-hour breaks "all day," can occasionally lift 10 pounds, and is expected to be absent more than four times per month [R. at 549-52]. In October 2013, Dr. Ganti opined that [Plaintiff] could sit for six hours in an eight-hour workday, stand or walk for three hours in an eight-hour workday, will require unscheduled breaks "all day," can occasionally lift less than 10 pounds, is limited to 25% use of the upper extremities, and is expected to be absent more than four times a month [R. at 553-56]. In August 2014, Dr. Ganti opined that [Plaintiff] could sit for three hours in an eight-hour day, stand or walk for 15 minutes in an eight-hour day, would require unscheduled breaks every 30 minutes lasting 30 minutes each, never lift any weight, is limited to 80% use of the upper extremities, and is expected to be absent more than four times per month [R. at 584-88].

R. at 37.

**B.  State Agency Medical Consultants**

On October 16, 2012, a state agency medical consultant, Fulvio Franyutti, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 111-13. Dr. Franyutti opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the left lower extremity. R. at 112. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 112. Plaintiff was to

avoid concentrated exposure to extreme cold and heat; vibration; and fumes, odors, dusts, gases, and poor ventilation. R. at 113. She was to avoid even moderate exposure to hazards such as machinery and heights. R. at 113. Plaintiff had no manipulative, visual, or communicative limitations, however. R. at 113. Dr. Franyutti found that Dr. Ganti's May 2012 opinion "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." R. at 114. Dr. Ganti's "opinion is without substantial support from other evidence of record, which renders it less persuasive." R. at 114.

On April 5, 2013, another state agency consultant, J. Biddison, M.D., again assessed Plaintiff's physical RFC. R. at 124-26. Dr. Biddison opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the left lower extremity. R. at 124-25. Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl. R. at 125. Although she was to avoid concentrated exposure to hazards, Plaintiff had no manipulative, visual, or communicative limitations. R. at 125-26. Dr. Biddison noted Plaintiff's diagnosis of deep vein thrombosis in her left leg in March 2011 but that there was no significant edema or ulceration on examination in September 2012. R. at 125. Dr. Biddison also found Dr. Ganti's May 2012 opinion to be "without substantial support from other evidence of record" and thus "less persuasive." R. at 126-27.

## C.  Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony in his decision:

> [Plaintiff] alleges disabling limitations due to leg problems, GERD, and heart problems [R. at 219-31.] [Plaintiff] testified regarding difficulty with sitting and standing. She reported swelling every day. Sometimes she cannot get out of bed. She goes to the doctor every 2-3 months for deep vein thrombosis.

4

> [Plaintiff] testified that she takes eardrops and nose spray for vertigo; the treatment helps "sometimes." She is treated for hypertension, and her treatment helps "sometimes."

R. at 35; *see* R. at 48-57.

**D.    VE Testimony**

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the RFC outlined below in Part III could perform the light, unskilled jobs of counter clerk, router, or office helper.[3] R. at 58-59. According to the VE, her testimony, with the exception of her testimony regarding a sit-stand option, was consistent with the *Dictionary of Occupational Titles*.[4] R. at 59. An individual who would need to elevate his or her feet above the heart for two to three hours during the workday would not be able to maintain work. R. at 60. Further, an individual off task 15% of a workday would not be able to maintain work. R. at 60.

### III

### Summary of ALJ's Decision

On January 15, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of February 1, 2012; and (2) had an impairment or a

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 416.968(a).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a counter clerk, router, or office helper. R. at 34-39. The ALJ thus found that she was not disabled from February 1, 2012, through the date of the decision. R. at 39.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 416.967(b) except she is limited to unskilled work. [Plaintiff] requires a sit-stand option at the work location, defined as sitting 1-2 hours at a time and standing for 15 minutes alternatively as needed or as required. [Plaintiff] can frequently hear and understand simple oral or written instructions.

R. at 35. The ALJ "considered the potential compounding effects of [Plaintiff's] obesity" under Social Security Ruling 02-1p. R. at 36. "[Plaintiff] is 5'10" and weighs approximately 350 pounds, producing a body mass index (BMI) of approximately 50. However, [Plaintiff's] regular activities, noted above, suggest that her obesity does not rise to a disabling level either on its own or in combination with another impairment." R. at 36 (citation omitted).

The ALJ gave "limited weight to Dr. Ganti's opinions, as they are inconsistent with his own treatment notes." R. at 37. "Dr. Ganti repeatedly states that [Plaintiff] is 'stable,' 'in no apparent distress,' or 'normal.' In addition, Dr. Ganti's treatment notes are unremarkable for noted signs of impairment in the upper extremities despite noting 25% usage of the upper extremities in October 2013 and 80% in August 2014." R. at 37 (citations omitted).

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that remand is warranted because the ALJ's RFC assessment failed to address her alleged need to elevate her legs as a result of her deep vein thrombosis. Pl.'s Mem. Supp. Mot. Summ. J. 13-15, ECF No. 22-2. She further maintains that the ALJ failed to evaluate properly her obesity according to Social Security Ruling 02-1p. *Id.* at 15-19. Plaintiff finally asserts that substantial evidence does not support the weight given by the ALJ to Dr. Ganti's opinions. *Id.* at 19-22. For the reasons that follow, Plaintiff's contentions are unavailing.

A.  ALJ's RFC Assessment

Social Security Ruling[6] ("SSR") 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff first maintains that remand is warranted because the ALJ failed to address in the RFC assessment her alleged need to elevate her legs as a result of her deep vein thrombosis. Pl.'s Mem. Supp. Mot. Summ. J. 13-15, ECF No. 22-2. According to Plaintiff, her leg "swells every day. Seven days a week, it swells, and I have to sit down and put it up for like two to three hours for the swelling to go down." R. at 53. The VE testified that a person's need to elevate his or her feet above the heart for two to three hours during the workday would preclude all work. R. at 60. The ALJ ultimately included a sit-stand option in the RFC assessment "[t]o further account for [Plaintiff's] deep vein thrombosis, vertigo, and obesity." R. at 38.

The Court finds that substantial evidence supports the ALJ's RFC assessment and his consideration of Plaintiff's deep venous thrombosis. As the ALJ noted in his decision, Plaintiff

> has a history of chronic venous insufficiency in the left leg. Providers diagnosed deep vein thrombosis (DVT) in March 2010. She began taking hydrocodone for pain. However, a report from May 2011 stated [Plaintiff] was on Coumadin for three months and a subsequent DVT workup was negative. She was off Coumadin in May 2011. Treatment notes from October 2011 stated that the condition had resolved. Treatment notes from January 2013 indicate "chronic edema of both lower extremities resolving"; a note from February 2013 stated "chronic edema of both lower extremities resolved." In February 2013, [Plaintiff's] primary care physician stated [Plaintiff] is doing "very well" with "no major issues or no concerns at this time." Treatment notes from August 2013, September 2013, October 2013, December 2013, and May 2014 indicate "chronic edema of both lower extremities," but the provider repeatedly notes that [Plaintiff] is "stable," "in no apparent distress," or "normal." [Plaintiff] testified that she remains off Coumadin.

R. at 36 (citations omitted); *see, e.g.*, R. at 477, 490-91, 539, 541, 561-71, 580-83. Plaintiff, moreover, points to no evidence in the record of any medical opinion that she should elevate her legs above her heart. *See Stephenson v. Comm'r of Soc. Sec.*, 635 F. App'x 258, 263 (6th Cir. 2015); *Martin v. Berryhill*, No. 1:16-3741-SVH, 2017 WL 3446573, at *15 (D.S.C. Aug. 11, 2017) ("Plaintiff has cited no evidence to support a need to elevate his right leg, and the undersigned's review of the record reveals no medical opinions or other evidence, aside from Plaintiff's testimony, that supports such a restriction. Therefore, the ALJ was not required to consider the VE's testimony that a need to elevate the right leg during the workday would preclude employment because the restriction was not credibly established in the record." (citation omitted)); *Deaver v. Colvin*, No. 5:13-CV-05776, 2014 WL 4639888, at *21 (S.D.W. Va. Sept. 16, 2014) ("Neither any consultant that offered an opinion, or an examiner, nor any of Claimant's treating providers placed any physical limitations on Claimant regarding her ability to sit, stand, or walk or advised her to elevate her legs as she alleges that she is required to do. Accordingly, the undersigned finds that Claimant's condition improved with medication and other treatment and that the ALJ's RFC is supported by substantial evidence."). The ALJ also found that Plaintiff's "regular activities suggest greater abilities than alleged. She has no restrictions on her driver's license and she helps her mother with cooking, cleaning, and grocery shopping. She goes to church 2-3 times per month. She visits family members" (R. at 36 (citations omitted)). Substantial evidence thus supports the ALJ's decision not to incorporate in the RFC assessment a requirement of leg elevation. *See Roberts v. Colvin*, Civil No. 15-164-ART, 2015 WL 12661963, at *3 (E.D. Ky. Dec. 22, 2015) ("[The claimant's] testimony about her activities suggests that she does not need to constantly elevate her legs. [The claimant] testified that she elevates her legs while watching television or talking on the phone, but did not

mention doing so other times. In addition, [the claimant] said that she shopped for groceries twice a month, cooked for herself, cleaned, attended church every Sunday, went to hour-long hair appointments at Walmart, and—during the summer—went to the park every day with her niece and worked part-time for a community action agency. These types of activities suggest that [the claimant] can function for extended periods of time without elevating her legs. Therefore, the ALJ's decision not to limit [the claimant] to jobs where she could elevate her feet was supported by substantial evidence." (citations omitted)). Finally, contrary to Plaintiff's assertion, the ALJ's inclusion of a sit-stand option accounted for Plaintiff's swelling in her legs. *See id.* ("Moreover, the ALJ did accommodate any swelling in [the claimant's] legs in his hypothetical to the VE. [The claimant] testified that her legs swell when she sits for too long or stands for too long. So the ALJ asked the VE for jobs with an option to switch from sitting to standing every 30 minutes. And there is no indication from the record that the thirty-minute sitting/standing rotation would not accommodate any alleged swelling issues." (citations omitted)). For these reasons, Plaintiff's contentions in this regard are unavailing.

**B.     ALJ's Consideration of Plaintiff's Obesity**

Plaintiff next contends that the ALJ failed to evaluate properly her obesity according to SSR 02-1p, arguing that the ALJ failed to consider properly the effect of her obesity in combination with her other impairments and on her ability to work on a sustained basis. Pl.'s Mem. Supp. Mot. Summ. J. 15-19, ECF No. 22-2. The ALJ, however, acknowledged Plaintiff's obesity and found it to be a severe impairment. R. at 34. In fact, the ALJ stated that he had "considered the potential compounding effects of [Plaintiff's] obesity pursuant to SSR 02-01p," but he had found that Plaintiff's activities "suggest that her obesity does not rise to a disabling level either on its own or in combination with another impairment." R. at 36. Thus, "[t]he ALJ's

determination of Plaintiff's functional limitations was based on Plaintiff's reports of daily activities . . . , which show that any limitations based in part on obesity would not preclude light work as modified by the RFC." *Resendez v. Colvin*, No. 14-CV-02969-NJV, 2015 WL 5316442, at *7 (N.D. Cal. Sept. 11, 2015). "Plaintiff fails to point the court to any evidence of record to indicate that [her] obesity would limit [her] ability to function at the RFC level." *Id.* "Plaintiff's reports of [her] own daily activities support the ALJ's conclusion that even with Plaintiff's obesity [she] can perform work at the RFC level." *Id.* In any event, the ALJ included a sit-stand option to account for Plaintiff's obesity. R. at 38. Because Plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider," Plaintiff's argument regarding the ALJ's consideration of her obesity is without merit. *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).

## C. ALJ's Consideration of Dr. Ganti's Opinions

Plaintiff finally asserts that the ALJ failed to comply with 20 C.F.R. § 416.927 by failing to give adequate weight to the opinions of Dr. Ganti, her treating primary care physician. Pl.'s Mem. Supp. Mot. Summ. J. 19-22, ECF No. 22-2. In this regard, the Fourth Circuit reiterated the following standard for considering medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 416.927. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d

1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Plaintiff contends that substantial evidence does not support the ALJ's reasoning for affording limited weight to Dr. Ganti's opinions because the doctor repeatedly noted in treatment notes her chronic lower extremity edema, asthma, and morbid obesity. Pl.'s Mem. Supp. Mot. Summ. J. 22, ECF No. 22-2. The Court finds, however, that substantial evidence supports the limited weight given by the ALJ to Dr. Ganti's opinions because they were not consistent with the doctor's treatment notes (*see, e.g.*, R. at 477, 490-91, 539, 541, 561-71, 580-83). *See Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (ALJ did not err in giving physician's opinion little weight where physician's opinion was not consistent with her own progress notes); *Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence; opinion was conclusory and based on claimant's subjective reports, and treating physician's own notes contradicted his opinion).

In short, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (Posner, C.J.) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in record); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that ALJ permissibly rejected psychological evaluations because they were check-off

reports that did not contain any explanation of the bases of their conclusions). Because substantial evidence supports the weight afforded by the ALJ to Dr. Ganti's opinions, the Court grants Defendant's Motion for Summary Judgment and affirms the Commissioner's final decision.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 22) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: September 27, 2017

/s/
Thomas M. DiGirolamo
United States Magistrate Judge